**NOT FOR PUBLICATION**                                                             **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CATHYJO ROGOSICH, *et al.*, | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiffs, | Civil Case No. 12-2916 (FSH) |
| v. | **OPINION & ORDER** |
| TOWNSHIP OF WEST MILFORD MUNICIPAL UTILITIES AUTHORITY, *et al.*, | Date: August 9, 2013 |
| Defendants. | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendants' motion to transfer or dismiss the complaint [Docket No. 19]. The Court has considered the parties' written submissions pursuant to Fed. R. Civ. P. 78.

### I.     BACKGROUND[1]

Plaintiff Cathyjo Rogosich was hired as a part-time clerk typist by Defendant West Milford Municipal Utility Authority ("MUA") on November 27, 2007. She held this position until February 2, 2010 when she obtained a full-time position as Senior Account Clerk, which included an increase in salary and benefits. On January 30, 2012, after holding the Senior Account Clerk position for two years, Mrs. Rogosich's hours were cut to part-time, her salary was reduced, and her benefits were revoked. On February 2, 2012, allegedly due to a hostile work environment and deterioration of her health, Mrs. Rogosich was put on temporary disability.

---

[1] The facts set forth here are drawn from the Amended Complaint. At the motion to dismiss stage, this Court accepts these facts as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

The Amended Complaint alleges that during her employment with the MUA, Mrs. Rogosich witnessed various illicit activities and violations of the law that she reported, and in retaliation, she suffered various adverse employment actions in violation of federal and state law. According to the Amended Complaint, the illicit activities Mrs. Rogosich witnessed and reported or challenged included, *inter alia*: her colleague, Defendant Kelly Love, cutting and taping the chairman and treasurer's names on MUA bill resolutions and changing Board meeting minutes to be inaccurate; questionable charges to the MUA for alcohol purchases during a trip to Atlantic City; Defendant Love lying to the New Jersey Division of Pension and Benefits about the official start date of Mrs. Rogosich's full-time position; and Defendant Love never giving the Board Mrs. Rogosich's comments or responses to her performance evaluation for the Board's review, even though Defendant Love was required to do so. The Amended Complaint also alleges that on one occasion, Defendant Love slapped Mrs. Rogosich when she attempted to correct Love, who was providing an attorney with incorrect MUA account figures. Further, the Amended Complaint alleges that her due process rights were violated following a two week absence from work after she was involved in a car accident: she was allegedly suspended without notice for two days and without pay for failing to return from lunch on the day of her accident, and her hours and breaks were reviewed more strictly than others' hours and breaks.

Because of the aforementioned incidents, Mrs. Rogosich's attorney sent a Notice of Claim to the MUA, after which Mrs. Rogosich allegedly suffered from more hostility and adverse employment actions, including being written up for leaving work 12 minutes early; being assigned more work tasks; not being given overtime in favor of a part-time employee despite her seniority; being restricted from using the restroom; and getting written up for being less than two minutes late to work. In addition, according to the Amended Complaint, Mrs.

Rogosich wrote to the Board reporting that Defendant Love failed to make timely cash deposits into the MUA bank account. There was a Board meeting that evening, which Mrs. Rogosich was required to attend to take minutes, but that evening she was asked to leave immediately. She was subsequently informed that she was demoted to part-time with various reductions in her pay and benefits. Plaintiffs claim that because of the hostile work conditions Mrs. Rogosich endured during the course of her employment and because of deteriorating health, she was put on temporary disability, and her husband has as a result been deprived of her services and consortium.

Based on these allegations, the Amended Complaint[2] includes claims for violations of the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, conspiracy to violate civil rights, and alleges municipal liability for these violations. Plaintiffs also bring several state law claims for assault, loss of services and consortium, and violations of the New Jersey Law Against Discrimination and the Conscientious Employment Protection Act.

## II.     STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for

---

[2] Plaintiffs filed the original complaint against Defendants on May 16, 2013. The complaint was dismissed by this Court without prejudice for failure to "separately specify the facts and law underlying each individual count" such that Defendants had not been provided fair notice of the claims and the grounds for those claims. [December 5, 2012 Order, Docket No. 14]. Plaintiffs thereafter filed an Amended Complaint which Defendants have moved to dismiss or transfer. [Docket Nos. 15, 19].

enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

### III. DISCUSSION

#### A. First Amendment Claim

The Amended Complaint raises a First Amendment retaliation claim against Defendants Love and MUA under 42 U.S.C. § 1983, alleging that Defendants took adverse employment actions against Mrs. Rogosich in retaliation for her reporting violations that she observed at work.

It is firmly established that § 1983 is not a source of substantive rights but rather provides remedies for deprivations of rights established in the Constitution or federal laws. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). A public employee's freedom of speech, guaranteed by the First Amendment, is protected from infringement by persons acting under the color of state law by § 1983. A public employee asserting a First Amendment retaliation claim must

establish that she engaged in activity protected by the First Amendment and that the protected activity was a substantial or motivating factor for an adverse action taken by the employer. *Rodriguez v. Torres*, 60 F. Supp. 2d 334, 339 (D.N.J. 1999) (citing *Fultz v. Dunn*, 165 F.3d 215, 218 (3d Cir. 1998)). A public employee's statement is protected activity when the employee spoke as a citizen when making a statement, the statement involved a matter of public concern, and the employer did not have "'an adequate justification for treating the employee differently from any other member of the general public'" as a result of the statement. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (quoting *Garcetti v. Ceballos*, 547 U.S. 410 (2006)).

The first requirement that the public employee speak as a citizen helps to ensure that the First Amendment does not "empower [public employees] to 'constitutionalize the employee grievance.'" *Garcetti*, 547 U.S. at 420 (2006) (internal quotations omitted). Thus, when public employees speak "pursuant to their official duties," their speech does not receive First Amendment protection from "employer discipline." *Id.* at 421. Courts consider two significant factors when determining whether a public employee has acted as a private citizen: (1) whether the employee expressed her views inside the workplace, and (2) whether her speech concerned the subject matter of her employment. *Id.* at 420-21.

The Amended Complaint does not clearly set forth with sufficient detail the specific speech that Mrs. Rogosich is alleging was protected, nor which incident(s) or adverse employment actions followed a specific statement and violated her First Amendment rights.[3]

---

[3] For example, Plaintiffs' opposition brief specifies that paragraph eleven of the "Factual Statement" in the Amended Complaint forms a basis for the First Amendment claim, as it states that Mrs. Rogosich's salary was decreased in retaliation for "Plaintiff's reporting violations"; however, the Amended Complaint does not specify which reports of violations led to a decrease in salary, nor does it specify to whom such reports were made. Plaintiffs' opposition brief also

5

Moreover, the Amended Complaint does not allege facts showing that Mrs. Rogosich engaged in protected activity because she was retaliated against for speech she made as a *private citizen* about a matter of *public concern*. A fair reading of the Amended Complaint suggests that Mrs. Rogosich made statements at her place of employment pursuant to her work duties, not as a private citizen. While the facts alleged in the Amended Complaint may establish a New Jersey Conscientious Employee Protection Act claim which she can pursue in state court, they fail to state a First Amendment claim, and this claim is dismissed.

### B. Equal Protection Claim

Count Two of the Amended Complaint alleges that Defendant MUA deprived Mrs. Rogosich of "equal protection of the laws" as guaranteed by the Fourteenth Amendment through various forms of unequal treatment in violation of 42 U.S.C. § 1983. Defendant MUA allegedly violated Mrs. Rogosich's civil rights by, *inter alia*, intentionally disciplining Mrs. Rogosich unnecessarily.

The scope of the equal protection clause in the public employment context is restricted to those situations "when the government makes class-based decisions . . . , treating distinct groups of individuals categorically differently." *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 605 (2008) (citations omitted).[4] The Amended Complaint alleges various instances in which Mrs.

---

appears to clarify that paragraph five of the "Factual Statement" of the Amended Complaint relating to Mrs. Rogosich's challenge of the validity of vouchers following a trip to Atlantic City asserts a violation of the First Amendment. However, the Amended Complaint specifically cites to a violation of the Conscientious Employment Protection Act for this factual contention, not the First Amendment. (Opp. Br. at pp. 2-4.) A complaint cannot be amended through an opposition brief. *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

[4] The Supreme Court has recognized equal protection claims brought by a "class-of-one" in which the plaintiff asserts intentional, differential treatment on an arbitrary or irrational basis. *See Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). However, the "class-of-one" theory

Rogosich was treated differently from other employees. For example, she was the only employee required "to document every minute of her time"; her use of the restroom was restricted; and she was written up "for being less than two minutes late measure by a nonexistent official office clock." Such allegations do not by themselves establish discriminatory treatment. The Amended Complaint does not allege that Mrs. Rogosich was a member of a protected class, therefore the equal protection claim is dismissed.

### C. Due Process Claim

The Amended Complaint asserts in multiple counts that Mrs. Rogosich's Fourteenth Amendment right to due process was violated. However, the Amended Complaint does not clearly lay out a due process claim[5] and does not contain a short and plain statement showing

---

does not apply in the context of employment discrimination by a public employer. *Engquist*, 553 U.S. at 605.

[5] For example, the Amended Complaint does not specify whether Mrs. Rogosich held a tenured or at-will position, which could be dispositive of a due process claim. When a plaintiff asserts a § 1983 procedural due process claim, courts undergo a two-stage analysis, inquiring: "(1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (citations omitted); *Elmore v. Cleary*, 399 F.3d 279, 282 (3d. Cir. 2005). "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Elmore*, 399 F.3d at 282 (citing *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Property interests and legitimate entitlements are creatures of state law. *Brown v. Trench*, 787 F.2d 167, 170 (3d Cir.1986); *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir.1997). New Jersey law recognizes an entitlement to continued employment for those employees who demonstrate "statutory tenure, contractual commitment or collective negotiation agreement." *Nicoletta v. North Jersey Dist. Water Supply Commission*, 77 N.J. 145, 150 (1978); *Bruce v. Port Authority of New York and New Jersey*, 487 Fed. Appx. 707, 709-10 (3d Cir. 2012).

Employees who hold their position at the will of a public employer are not entitled to assert due process claims against their employer for failure to provide adequate notice or hearing prior to an adverse employment action. *Elmore*, 399 F.3d at 282 ("[O]nce a court determines that a public employee 'held [her] position at the will and pleasure of the [governmental entity],' such a finding 'necessarily establishes that [the employee] had no property interest' in the job sufficient to trigger due process concerns.") (quoting *Bishop v. Wood*, 426 U.S. 341, 346 (1976)); *Miller v. Township of Readington*, 39 Fed. Appx. 774 (2002) (affirming district court's decision

that the pleader is entitled to relief on such a claim, pursuant to Fed. R. Civ. P. 8. The various counts invoking "due process" cannot be distinguished from each other. Defendants request that the multiple counts asserting due process claims be described more definitively and consolidated into one count. In their opposition brief, Plaintiffs specify which facts underlie the due process claim. (Opp. Br. at pp. 2-4.) However, as the Court noted in its December 5, 2012 Order, Plaintiffs cannot amend the complaint through their opposition brief. *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Moreover, because Plaintiffs were already ordered to clarify their claims and specify the law and facts for each separate count, but have failed to adequately do so, no further amendment or clarification is permitted. *Gawlas v. King*, 511 Fed. Appx 160, 164 (3d Cir. 2013).

### D. Conspiracy to Violate Civil Rights

The Amended Complaint alleges that Defendants Love and MUA conspired to deprive Mrs. Rogosich of her civil rights. "To make out a conspiracy claim under § 1983, [Plaintiff] must show that 'persons acting under color of state law conspired to deprive [her] of a federally protected right.'" *Perano v. Township of Tilden*, 423 Fed. Appx. 234, 239 (3d Cir. 2011) (unpublished) (quoting *Ridgewood Bd. of Educ. v. N.E.* ex rel. *M.E.*, 172 F.3d 238, 254 (3d Cir.1999)). "As a threshold matter, however, a § 1983 conspiracy claim only arises when there

---

that plaintiff had no property interest in her employment as it was at-will because her position was created "at the pleasure of the committee" of the township and she served at the committee's pleasure). The Amended Complaint does not allege facts that would suggest Mrs. Rogosich was anything other than an "at-will" employee. For example, the Amended Complaint does not state that she had a tenured position, nor does it cite specific municipal policy or procedure that would lead one to infer she possessed a legitimate entitlement in her job—such as a "just cause" termination provision. Furthermore, the Amended Complaint contains no facts which suggest that there was a "mutually explicit understanding" or implicit contract between Mrs. Rogosich and Defendant MUA regarding the nature or duration of her employment. *Perry v. Sindermann*, 408 U.S. 593, 602 (1972). Therefore, the Amended Complaint fails to establish a basis for a protected property interest in Mrs. Rogosich's continued employment with the MUA.

has been an actual deprivation of a right." *Perano v. Township of Tilden*, 423 Fed. Appx. 234, 239 (3d Cir. 2011) (citing *Andree v. Ashland County*, 818 F.2d 1306, 1311 (7th Cir.1987)).

As has already been shown, the Amended Complaint fails to assert any viable federal claim as it does not show the violation of a federally protected right. Without a federal right to ground it, the conspiracy claim fails.

### E. Liability of Defendant MUA

Count Six of the Amended Complaint asserts that "Defendant Love acted in the full scope of her employment and with the full knowledge, direction and control of Defendant MUA" and that Defendant MUA is liable "in its own right as well as [as] the superior of [Defendant Love]."

In order to hold Defendant MUA primarily liable for the alleged constitutional violations, a plaintiff must show that the complained of actions were conducted "pursuant to official municipal policy [or custom]." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691, 694 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.").[6] The Amended Complaint does not contain facts that establish a policy or custom in force that operated to deprive employees, and specifically Mrs. Rogosich, of their rights. All of the alleged violations appear singular in effect and directed at Mrs. Rogosich. Furthermore, there are no allegations that Defendant Love ever

---

[6] Defendants note that there is no respondeat superior liability for a municipality or municipal entity under § 1983. *Monell*, 436 U.S. at 691 ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."). Plaintiffs claim in their opposition brief that their claim against Defendant MUA is not based on respondeat superior, but instead is based on Defendant MUA's participation in the alleged violations. (Opp. Br. at pp. 9-10.)

possessed or was acting within the scope of any policymaking authority to ground Defendant MUA liable under § 1983. Additionally, any claim that Defendant MUA acted directly and individually to deprive Mrs. Rogosich of her rights must actually demonstrate that there was a deprivation of such rights. As already discussed, the Amended Complaint fails to show a violation of federal rights; accordingly, there are no § 1983 claims for which the Defendant MUA can be held liable.

    IV.    **AMENDMENT OF THE COMPLAINT**

On December 5, 2012, the Court dismissed Plaintiffs' original complaint because it failed to "separately specify the facts and law underlying each individual count" such that Defendants were not given fair notice of the claims or the grounds of the claims, and because the Court found it "difficult to follow the Complaint and to determine and assess the specific legal and factual bases for each claim." [December 5, 2012 Order at 1, Docket No. 14.] The Court gave Plaintiffs the opportunity to amend the complaint to cure its deficiencies. Plaintiffs attempted to do so by filing an Amended Complaint, but the Amended Complaint still suffers greatly for the reasons discussed above. Because Plaintiffs were already given a chance to amend and cure deficiencies in their complaint but failed to adequately do so, the Court finds that amendment of Plaintiffs' federal claims would be futile and is not warranted. *Gawlas*, 511 Fed. Appx. at 164.

    V.    **STATE LAW CLAIMS**

Plaintiffs' remaining tort, New Jersey Law Against Discrimination ("NJLAD"), New Jersey Conscientious Employee Protection Act ("CEPA"), and per quod claims against Defendants are predicated on state law, and Plaintiffs' Amended Complaint asserts that the basis for the Court's jurisdiction over those claims is 28 U.S.C. § 1367. Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district court may decline to exercise supplemental jurisdiction over a claim" if

"the district court has dismissed all claims over which it has original jurisdiction." The Third Circuit has recognized the authority of district courts to decline to retain jurisdiction after the federal claims have been dismissed. *See, e.g., Annulli v. Panikkar*, 200 F.3d 189, 202-03 (3d Cir. 1999) (affirming decision of the district court to decline to exercise pendent jurisdiction after granting summary judgment to the defendants on the claims arising under federal law), *abrogated on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000); *Jackson v. Fauver*, 334 F. Supp. 2d 697, 737-38 (D.N.J. 2004). The Court therefore declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims. Plaintiffs may choose to refile those claims in state court.[7]

## VI.   CONCLUSION & ORDER

For the foregoing reasons,

**IT IS** on this 9th day of August 2013,

**ORDERED** that Defendants' Motion to Dismiss is **GRANTED** as to Plaintiffs' federal claims, which are **DISMISSED**; and it is further

**ORDERED** that Plaintiffs' state law claims are **DISMISSED** without prejudice to Plaintiffs re-filing those claims in state court.

/s/ Faith S. Hochberg_____
**Hon. Faith S. Hochberg, U.S.D.J.**

---

[7] Defendants request that Counts 2, 3, and 5 of the Amended Complaint, which include alleged violations of the New Jersey Law Against Discrimination and the Conscientious Employment Protection Act, be transferred to the New Jersey Civil Service Commission because Mrs. Rogosich is an employee of a civil service entity and these claims are allegedly within the exclusive and primary jurisdiction of state agencies. (Def. Br. at pp. 3-7.) However, because the Court declines to exercise jurisdiction over these claims, the Court will not reach this argument. To the extent Defendants argue the same with respect to the federal claims, Defendants provide no controlling authority showing that a federal court can or is required to transfer such claims to a state agency.